## WILLIAM T. BURGESS

*v.*

## ANNA M. RUGGLES *et al.*

### *Filed at Ottawa June 19, 1893.*

1. TRUST DEED—*sale thereunder—irregularity in proceedings.* A sale of land under a power in a deed of trust is not void for irregularities in the notice and sale, but only voidable ; and when the debtor files his bill to set aside such a sale and for leave to redeem, if he is allowed to redeem he should be required to pay the sum due, within a reasonable time, and on his failure to pay as required, his bill should be dismissed, and the sale under the trust deed should be allowed to stand confirmed and unimpeached.

2. SAME—*setting aside sale thereunder.* A sale under a deed of trust which is not void, but only voidable, can be set aside only at the option of the *cestui que trust,* and that must be determined in apt time. He has an election to treat the sale as valid, and when the sale becomes conclusive on him, a creditor of the *cestui que trust* can not then legally levy on the property so sold.

3. Where a sale of land is attacked, not as simply void for non-compliance with a power of sale, but as voidable on equitable considerations, having reference to the unfair mode in which the power has been executed, the decision must turn upon a comparison of the equities. The party seeking equitable relief must make a case which appeals to the conscience of the court. If he has no merit he will not be entitled to relief.

4. After a sale under a power in a deed of trust, the owner of the property filed his bill and obtained a decree setting aside the sale and allowing a redemption, on condition of payment of the debt due, within a reasonable time fixed by the court, but which provided that if the redemption money was not paid in such time the sale should stand confirmed and the bill be dismissed. The redemption money was not paid : *Held,* that a judgment creditor of the original owner, after such sale became absolute, acquired no title by a levy and sale of the property under an execution against the original owner.

5. APPEAL—*to Supreme Court—when it lies.* A decree which takes from a party the benefit of a decree previously rendered in his favor, as giving him a right to redeem from a sale under a trust deed, and transfers it to another, is so far final between such parties as that an appeal will lie to have it reviewed.

Appeal from the Superior Court of Cook county; the Hon. Francis M. Wright, Judge, presiding.

The facts found in this voluminous record, necessary to a determination of the questions involved, are as follows:

On August 21, 1875, Arthur W. Windett, being the owner of lot 98, in Ellis' east addition to Chicago, together with his wife, Eliza D., conveyed the same by trust deed, waiving and releasing the homestead, to Oliver S. Carter in trust, to secure the note of Windett to appellee Ruggles for $12,000, due in five years from date, with nine per cent per annum interest. On August 10, 1882, J. Henry Westover, as attorney in fact for the trustee, Carter, published a notice of sale of the premises under the power in the trust deed, to take place on the 16th day of September, 1882. On the 15th day of that month Windett filed his bill in chancery in the circuit court of Cook county, against Carter, Ruggles and Westover, setting up that said notice of sale was irregular and insufficient, and praying an injunction to restrain the sale, and he be allowed to redeem from the trust deed. An injunction issued as prayed, and the writ was served on the defendants prior to the sale. On the 16th day of September a sale was made notwithstanding the injunction, and the premises struck off to Horace A. Hurlbut, and a deed duly executed and delivered to him. Hurlbut acted for Mrs. Ruggles, and whatever rights were obtained under that sale and deed accrued to her.

On June 1, 1883, Windett filed an amendment to his bill, setting up that the sale was made on an improper notice, after the writ of injunction had been served; that no actual sale of the premises was made by the trustee; that the deed to Hurlbut was made in fraud and violation of the trust deed and in fraud of the order for an injunction, and praying that the sale be set aside and he be allowed to redeem. On June 4, 1883, the defendants to that amended bill filed their joint answer thereto, denying all the material allegations thereof,

and alleging that the sale was in all things regular, and the title to the premises, by virtue of the trust deed and sale, and the deed executed in pursuance thereof, became and was vested in Hurlbut.

On January 2, 1884, on a hearing, a decree was entered allowing a redemption of the property upon the payment by Windett to Mrs. Ruggles of the sum of $11,690.29, with interest, etc., within ninety days from December 10, 1883, it being provided in the decree that "if complainant should not pay the said sum of money within the time limited, the said sale of the said property, and the said deed to said Hurlbut, should stand confirmed and unimpeached by any matter or thing contained in the said decree, and the complainant's bill should be dismissed with costs."

On March 10, 1884, a further decree was entered in said cause, as follows : "This cause again coming on for hearing, on the petition of the complainant, for an extension of the time in which to make payment of the sum of money required to be paid by the complainant within ninety days from the 10th of December, 1883, as provided by the decree of this court heretofore and on the 2d day of January, 1884, entered herein, and the complainant having filed a release of all errors in the proceedings up to this date, and hereby agreeing not to prosecute a writ of error or appeal from said final decree or from this order, and after hearing counsel for the complainant and for the defendants, and the complainant appearing in person and moving for an assenting to this order in open court, it is now ordered and adjudged by the court, that the time within which said principal sum of eleven thousand six hundred and ninety dollars and twenty-nine cents ($11,690.29), with interest thereon from the 10th day of December, 1883, until the day of payment, as in said former decree is provided to be paid, be and the same is hereby extended until and including the 4th day of June, A. D. 1884; and if said principal sum and interest are not paid by the said last mentioned date to

the clerk of this court, the said sale of said property in said decree mentioned, to-wit, lot 98 in Ellis' east or second addition to Chicago, by the defendant J. Henry Westover, as attorney in fact for the defendant Oliver S. Carter, trustee, to the defendant Horace A. Hurlbut, on the 6th day of September, 1882, under a trust deed made by the complainant Arthur W. Windett and wife to said Carter, and the title of said Hurlbut to said property, as derived from and through said sale, shall stand confirmed and unimpeached, and the complainant's bill shall stand dismissed with costs, without further order herein." It is admitted by all parties that the terms of this decree were never performed by Windett, or any one acting for or on his behalf, at any time.

On November 28, 1881, the Sawyer-Goodman Company had obtained a judgment against Windett in the Superior Court for $856. On April 1, 1882, Francis Salter also recovered a judgment in the same court against Windett for $167.39, on which judgments executions were duly issued, and returned no property found. Thereafter, on December 20, 1882, the Sawyer-Goodman Company filed an ordinary creditor's bill against Windett, describing no particular property, and making no mention whatever of said trust deed or sale. No action seems to have been taken under that bill until September 15, 1887, when appellant Burgess appeared in the case under the following circumstances: On the 14th of said September he entered into an agreement with the Sawyer-Goodman Company, through its attorneys, as follows:

"In the Superior Court of Cook County.

| The Sawyer-Goodman Co. | | No. 80,683. |
| v. | Confession. | Judgment, $856 and costs. |
| Arthur W. Windett. | | Nov. 28, 1883. |

"For value received, the Sawyer-Goodman Company, plaintiff in the above case, doth assign the above judgment to William T. Burgess and his assigns, authorizing and empowering him to have, use and take all lawful ways and means,

in the name of said company or otherwise, but at his own costs and charges, to collect it. He is to give the said company one-half of whatsoever he may realize on said judgment, provided that when said company shall have received one-half full payment of said judgment, with interest and costs, said Burgess is to have all the surplus thereafter. The said Burgess hereby agrees to indemnify and save harmless said company of and from all costs, expenses and damages arising out of the use of said judgment by him, and may compromise said judgment, but not for a less sum than $400, without the consent of said company.

"Dated this 14th day of September, A. D. 1887.

W. T. BURGESS,     [Seal.]

SAWYER-GOODMAN Co., [Seal.]

By JAMES B. GOODMAN, *Sec'y.*"

It seems that,. upon the making of this contract, the former attorneys of the company agreed to withdraw their appearance in said creditor's bill, and on the 15th day of September, 1887, Burgess appeared, ostensibly for it, but, as the facts subsequently showed, for himself, and filed an amendment to the creditor's bill, making Carter, Ruggles, Hurlbut and other parties connected with the trustee's sale, parties defendant, setting up substantially the same irregularities in making the sale which had been alleged by Windett in his bill to redeem, and praying that said company be allowed to redeem. On May 12, 1888, he paid to the attorneys of the company $200, informing them that he had compromised the judgment in the company's favor, against Windett, for $400, and requesting them to withdraw their appearance from the cause, which they afterwards did.

On November 9, 1887, the premises in question were sold by the sheriff of Cook county upon executions issued upon the judgments in favor of said company and Salter, and struck off to one E. A. Paul for $1441.41, which amount was receipted on the executions by Burgess, and the same returned satis-

fied. The evidence clearly shows that the execution under which that sale was made in favor of the Sawyer-Goodman Company, was issued without its knowledge or consent, or that of its attorneys, and there is nothing in the record to show how the one in favor of Salter came to be issued, or whether he received anything from the sheriff's sale. After that sale, and before the time of redemption expired, Paul assigned his certificate of purchase to Burgess, and he, on February 11, 1889, took a deed from the sheriff for the premises.

On February 12, 1889, Burgess, without the knowledge or consent of the Sawyer-Goodman Company, again amended said creditor's bill, setting up that by reason of the sheriff's sale and deed he had become the owner of lot 98, the allegations as to his ownership being as follows: "And said Burgess claims under the said Salter judgment, and execution, levy and sale thereunder, the said land and premises; avers that the facts, matters and things touching said debt to said Ruggles, trust deed and pretended sale, and trustee's deed thereunder, in said original bill of complaint, as amended, set forth and charged, are true as therein stated. By means of the said several premises, etc., said land and premises have become and are the property of said Burgess, subject only to the title of said trust deed in favor of Anna M. Ruggles, for what shall appear to be due her on an account to be taken in the premises; and said Burgess, claiming said land under said Sawyer-Goodman Company judgment, bill filed in aid thereof, execution, levy and sale thereunder, is entitled to further prosecute said bill to the relief thereby and therein prayed for, in like plight and condition, and to the same extent, as the Sawyer-Goodman Company could prosecute and recover therein and thereby." The prayer was, that Burgess be decreed all the rights and relief the Sawyer-Goodman Company could have to the lot under its bill, and he be allowed to redeem upon an account to be taken, making all due and proper allowances, and that the sale to Hurlbut be declared a nullity

and no bar to his right to redeem. To this bill Arthur W. Windett was also made a defendant, with Ruggles, Carter and other defendants to the bill as formerly amended.

On the 4th of March, 1889, Windett was defaulted, and Hurlbut, Carter, Ruggles and Westover filed their joint answer, insisting upon the regularity of the trustee's sale and the validity of the title in Hurlbut in pursuance thereof, and charging that the amended bill was filed in the interest of Windett, by collusion between him and Burgess, for the purpose of avoiding the former decree against Windett on his bill to redeem.

On April 9, 1889, the default of Windett was set aside, and he filed his answer, alleging that the lot in question was his homestead, and setting up, at great length, various transactions between himself and Burgess, most of which had no connection whatever with the lot or the litigation previously had, growing out of the trustee's sale ; charging Burgess with a breach of confidence and fraud in and about those matters, and also charging him with gross misconduct in and about procuring said sheriff's sale and deed, concluding as follows : "This defendant insists and charges that each and all the said several steps, proceedings and actions taken, done and had by said Burgess in the premises, whether in the name of said Sawyer-Goodman Company, or said F. Salter, or his own, or any whatever other name he may have used, were illegal, fraudulent, null and void, and that said pretended levies, sales and deeds set up in said bill, original, amended and supplemental, as aforesaid, were and are, all and singular, utterly illegal, null and void, and he insists that the same should be so held and adjudged by this honorable court, and that said bill asserting and claiming title by virtue of said executions, levies, sales and deeds be dismissed for want of equity."

On the coming in of this answer Burgess again amended his bill, alleging that the trust deed to Carter contained a waiver and release of the homestead by Windett and wife,

and averring that "on the 5th day of June, 1884, the said Windett not having complied with the terms of said order and paid the money necessary to redeem the said lands and premises from said trust deed, his bill of complaint aforesaid was, by final decree of said court, dismissed out of court for want of equity, and the title of said Hurlbut, under the trustee's sale and deed to him aforesaid, became absolute and irredeemable by him, said Windett, whereby the said Windett became and was barred of all right, title and interest in said lands and premises, including the right of homestead therein, and said Windett has ever since, with his family, resided elsewhere than on said land, and abandoned his homestead therein." This amendment is signed by Burgess himself, for complainants. The answers of the several defendants theretofore filed stood to this amendment, Windett filing a further answer, charging that said sheriff's sale was fraudulently conducted and the property sold for a grossly inadequate price, and that Burgess obtained the Sawyer-Goodman Company claim by fraud and false representations made to the attorneys of said company.

On the 21st day of June, 1889, a decree was rendered allowing the prayer of the bill, the concluding part of which is as follows: "From all which the court finds that the said complainant, Burgess, notwithstanding the sale made by said J. Henry Westover, as the attorney of said Carter, to said Hurlbut, and the deed aforesaid thereon made to said Hurlbut by said Carter, through and by said Westover, as the attorney of said Carter, dated the 16th day of September, A. D. 1882, and recorded the same day in the recorder's office of said county, in book 1097 of records, page 361, conveying said lands and premises to said Hurlbut in pursuance of said sale, and notwithstanding the tax titles acquired by him, Hurlbut, as aforesaid, is entitled to redeem said lands and premises from the said trust deed and tax titles, on the payment of what, on an account being taken, shall appear to be justly

33—146 ILL.

due the said Anna M. Ruggles in the premises.    And to that
end, before entering a final decree herein, it is ordered that
it be referred to Penoyer L. Sherman, one of the masters in
chancery of this court, to take and state such account, in
which the said Ruggles shall be credited with the amount due
on said judgment, as shall appear from evidence to be taken
before him, and taxes paid, with interest at six per cent per
annum, and charged with the rents, issues and profits of said
lands and premises received, or which, by the exercise of ordi-
nary diligence, might have been received, and otherwise mak-
ing all due and proper allowances and charges, and that he
report with all convenient speed."

On May 13, 1890, Windett filed a cross-bill, making Burgess
and others defendants thereto, praying that all the rights so
decreed to Burgess be transferred to him, and on November 5,
1891, a decree was entered in his favor, according to the
prayer of that cross-bill.

On July 16, 1892, the cause came on for hearing before the
Hon. F. M. Wright, upon the report of the master made under
the order of reference by said decree of June 21, 1889, where-
upon it was decreed that there was due Anna M. Ruggles the
sum of $16,553.10, and upon the payment to her of that
amount, within five months from that date, "by the party or
parties hereinbefore by the interlocutory decrees and orders
of the court found entitled to make redemption of said prem-
ises, with interest thereon at five per cent per annum, from
the 13th day of July, 1891, (the date of said master's report,)
until the time of such payment, and the costs of this suit
taxed in favor of said Ruggles, that then the said Oliver S.
Carter, Anna M. Ruggles and Horace A. Hurlbut do join in
and execute, duly acknowledge and deliver to the parties so
making such payment, a release deed, releasing to him, her
or them the said lot 98, in Ellis' east or second addition to
Chicago, the land described in the bill of complaint and decree
of June 21, 1889, in this cause, from all right, title, estate or

interest acquired or held by them, or any of them, under said trust deed from Arthur W. Windett and Eliza D. Windett, his wife, in trust to said Carter for said Ruggles, or under the trustee's deed from said Carter to said Hurlbut, made thereunder, or the tax title or deed obtained thereon by John Carne, Jr., and by him conveyed and transferred to said Horace A. Hurlbut, mentioned in the pleadings and evidence in this cause, or otherwise howsoever, and also quit and surrender, upon notice and order of court to be obtained therefor, to him or them, the quiet and peaceable possession of the said premises, or in case of the failure of them, or any of them, for the space of five days thereafter, to make such deed, then that Alexander F. Stevenson, a master in chancery, be and he hereby is appointed special commissioner, under the statute, to make the same for them and on their behalf. And it was further ordered, that in case the said party or parties so adjudged by said interlocutory decrees and orders as entitled to redeem, shall not, within the time herein above limited for that purpose, pay said sum of $16,553.10, interest and costs, as herein above provided, then the original and supplemental bills, the cross-bill of Arthur W. Windett, and the cross-bill of Eliza D. Windett and Philisky E. Stanley, in the case of Sawyer-Goodman Company against Arthur W. Windett *et al.*, and the bill of said Arthur W. Windett against Horace A. Hurlbut *et al.*, consolidated therewith, be dismissed out of court for want of equity, so far as these proceedings relate to the redemption of said premises, at the costs of the respective complainants therein. It is expressly declared by the court that the only adjudication intended to be made by this decree is to fix the basis and terms upon which said premises may be redeemed by the parties or party heretofore by the court, in its interlocutory decrees and orders, adjudicated to have that right. All other rights and remedies, if any, involved in these proceedings, are to be and remain without prejudice by reason of this decree, the parties, respectively, having reserved

to them all such rights, if any such be involved herein, and the right to pursue the same either by action at law or suits in equity, or, if appropriate, by supplementary proceedings herein." The parties each and separately except.

This appeal is prosecuted by Burgess, who, claiming that the entire record, including said decree in favor of Windett, is before the court, seeks to have the same reversed and set aside. He also questions the correctness of said last decree fixing the amount to be paid Mrs. Ruggles in order to redeem. Anna M. Ruggles, Oliver S. Carter and Horace A. Hurlbut file their joinder in error, and also file cross-errors, by which they seek to have reversed and set aside the decrees in favor of both Burgess and Windett. Windett files a motion to dismiss the appeal, and assigns many causes, none of which are of a substantial character, unless it be that no final decree has been rendered in the case. He also insists upon the validity of the decree in his favor, questioning, however, the correctness of the finding in the final decree as to the amount due Mrs. Ruggles.

Mr. D. H. PINNEY, for the appellant:

A judgment creditor, in order to protect his lien, has a right to file a bill to redeem from a prior mortgage or trust deed, or to set aside an irregular sale made under either, and to redeem. *Grover* v. *Hale*, 107 Ill. 638.

The taking of the account—W. T. Burgess and A. W. Windett—whichever way it results, will not change the finding that Burgess purchased the property in trust for Windett, and he, Windett, is left by this decree the only one entitled to redeem from Ruggles. This is a final disposition, as between all parties, of the right of Burgess to redeem from Ruggles. *Dean* v. *Nelson*, 7 Wall. 392; *Forgay* v. *Conrad*, 6 How. 201.

That he may sue out a writ of error is sustained by the cases of *Rees* v. *Chicago*, 38 Ill. 332, *Enos* v. *Capps*, 12 id. 257, *Railroad Co.* v. *Reno*, 123 id. 278, and *Widner* v. *Meek*, 5 Otto, 256.

The rights of Windett to the land in question when the Sawyer-Goodman Company and the Salter judgments were rendered, became vested in Burgess, the grantee in the sheriff's deed under the sale on executions issued on said judgments, and all interest acquired from Windett after that time is thereby extinguished. Rev. Stat. chap. 77, sec. 18; *Turney* v. *Wilson,* 41 Ill. 220; *Jones* v. *Thompson,* 26 id. 177; *Rogers* v. *Brent,* 5 Gilm. 573; *Gorham* v. *Farson,* 119 Ill. 439.

Mr. ALLAN C. STORY, and Mr. G. F. WESTOVER, for the appellees Ruggles, Carter and Hurlbut:

Neither the Sawyer-Goodman Company nor Salter, as judgment creditors of Windett, nor Burgess, as the grantee or purchaser of the equity of redemption, has a right to maintain this bill to set aside and redeem from the trustee's sale of September 16, 1882, or has any standing in court for any purpose. Wait on Fraudulent Con. p. 555, sec. 403; *Norton* v. *Tuttle,* 60 Ill. 130; *Graham* v. *Railroad Co.* 102 U. S. 153; *Crocker* v. *Belangee,* 6 Wis. 645; *Gilbert* v. *Holmes,* 64 Ill. 548; *McDonald* v. *White,* 130 id. 498; *Bowers* v. *Bodley,* 4 Bradw. 282.

Neither the Sawyer-Goodman Company nor Salter, nor Burgess, as their assignee, can now enforce any claim or possess any rights to have the trustee's sale set aside and redemption allowed. Their gross *laches* amounts to a confirmation of the sale by the trustee. *Bush* v. *Sherman,* 80 Ill. 160; *McCarthy* v. *Marlett,* id. 526; *Nicholas* v. *Otto,* 132 id. 91; *McDonald* v. *Stowe,* 109 id. 40; *Maher* v. *Farwell,* 97 id. 56; *Munn* v. *Burgess,* 70 id. 604.

Complainants here had the right, assuming the sale under the mortgage to have been irregular, to elect whether they would avoid or ratify the sale; but this they were bound to determine within a reasonable time. It was not consistent with the principles of equity that they should wait for seven years, and speculate on the chances of the increase or depre-

ciation in the value of the property, before making their election. Consistently with previous decisions of this court, we must hold, under the evidence, complainants have been guilty of such *laches* as precludes all right of recovery in the present suit. *Cox* v. *Montgomery*, 36 Ill. 394; *Winchell* v. *Edwards*, 57 id. 45; *Shaw* v. *Beach*, id. 17; *Hamilton* v. *Lubukee*, 51 id. 416; *Burr* v. *Borden*, 61 id. 389; *Breit* v. *Yeaton*, 101 id. 242; *Dempster* v. *West*, 69 id. 613; *Williams* v. *Rhodes*, 81 id. 571; *McHany* v. *Schenk*, 88 id. 357; *Hoyt* v. *Pawtucket Institution*, 110 id. 390; *Speck* v. *Palace Car Co.* 121 id. 160; *Cleaver* v. *Green*, 107. id. 67; *Grover* v. *Hale*, id. 638.

Mr. ARTHUR W. WINDETT, *pro se.*

Mr. JUSTICE WILKIN delivered the opinion of the Court:

The motion to dismiss the appeal is overruled. The decree taking from appellant the benefits of the decree previously rendered in his favor and transferring them to appellee Windett, is so far final between them that an appeal will lie to have it reviewed. It finally fixes the rights of appellant, and the court below so treated it in its order of December 3, 1891. At the instance of appellee Windett the court then held that Burgess, "by reason of the decree entered in this cause on the 5th day of November, 1891, has no standing in court, and refused to hear him, touching the same."

Neither do we think it can be said that the record is brought up piecemeal, because the decree by Judge Wright leaves it undetermined which of the parties may redeem. That question had been settled by the former decree, in Windett's favor. If this court should affirm the last named decree, and sustain the finding as to the amount due Mrs. Ruggles, nothing would remain to be done in the Superior Court. If, on the other hand, that decree should be reversed and the one in favor of Burgess' right to redeem affirmed under the assignment of cross-errors, it would only be necessary to remand the cause

with directions, to give effect to that decree. And, finally, if both decrees to redeem are found to be erroneous, as they must be, and the cross-errors sustained, our judgment will be final, simply remanding the cause with directions to dismiss all bills and cross-bills to redeem. Therefore, in any view of the case, no good reason appears for farther protracting this litigation by dismissing the appeal and sending the cause back to the Superior Court.

On the merits of the case, the first question arising in natural order is, can the decree of June 21, 1889, giving Burgess a right to redeem, be sustained, because, if it can not, that of November 5, 1891, in Windett's favor, must also fail, the latter being merely a transfer of the benefits of the Burgess decree to Windett.

The sale under the trust deed, and the conveyance made in pursuance thereof, vested the legal title to the lot in question in Hurlbut, subject only to be avoided by Windett,—in other words, conceding all that is claimed against the validity of that sale, it was voidable only, and not void. Windett might abide by the sale, or disaffirm it, as he pleased. (*Jenkins* v. *Pierce et al.* 98 Ill. 653, and cases cited.) He chose to avail himself of the right to disaffirm it, and filed his bill accordingly, which was prosecuted to a final decree, giving him the right to redeem within ninety days from December 10, 1883. Failing to exercise that right within the time limited, on March 10, 1884, he obtained an order extending the time to June 4, 1884, and that order expressly provided, if the redemption money was not paid by that date, the sale to Horace A. Hurlbut, made on the 16th day of September, 1882, under the trust deed, and the title of Hurlbut to said lot, should "stand confirmed and unimpeached," and his bill be dismissed, with costs, without further order. This decree was the proper one to be made in such case, as we held in *Bremer et al.* v. *Canal and Dock Co.* 127 Ill. 493, citing the authorities. He again failed to make the redemption, but suffered the last named

date, June 4, to go by without paying the redemption money, and from that time to the present, in all the volume of pleadings filed in the case by himself and Burgess, not the slightest excuse or explanation as to why he did not do so has been offered.

What, then, was the condition of the title to the lot after June 4, 1884? Burgess himself answers the question in his last amendment to the Sawyer-Goodman Company bill, to which he had previously become the party complainant. He says: "The said Windett not having complied with the terms of said order and paid the money necessary to redeem the said lands and premises from said trust deed, his bill of complaint aforesaid was, by final decree of said court, dismissed out of court for want of equity, and the title of said Hurlbut, under the trustee's sale and deed to him aforesaid, became absolute, and irredeemable by him, said Windett, whereby the said Windett became and was barred of all right, title and interest in said lands and premises, including the right of homestead therein." And yet, more than three years after all Windett's right and title in said lot had become vested in Hurlbut, (on November 9, 1887,) the same was sold as the property of Windett, and in pursuance of and under that sale title is set up against Hurlbut. Nothing, it seems to us, could be clearer than that from and after June 4, 1884, the absolute title to the property was vested in Hurlbut, for Mrs. Ruggles, for whom he acted. The sale being voidable, Windett had left in him an equitable interest in it, but after the decree of June 4 all his right, title and interest, legal and equitable, were gone. "Such a sale can be set aside only at the option of the *cestui que trust,* and that must be determined in apt time. He has an election to treat the sale as valid, if he will." (*Hamilton v. Lubukee et al.* 51 Ill. 415.) Neither Francis Salter, nor the Sawyer-Goodman Company, could, after that time, legally levy on it as the property of Windett, much less could Burgess get a title under them upon which to base a right to redeem. If these parties had filed their bill in due time, asking a court

of equity to allow them to redeem as creditors, a very different case would have been presented.

But what is the position of Burgess in a court of equity, and what does he seek to do? He does not claim, as we understand, and certainly could not, under the evidence in the case, claim, to occupy the position of a creditor of Windett, asking a court of equity to allow him to redeem. He was never the *bona fide* owner of the Sawyer-Goodman Company judgment. It was only assigned to him for the purpose of collection. He never claimed the right to control the Salter judgment in any way. He is then driven to the position taken in his bill, that he is entitled to redeem as owner of the property. Unless it can be maintained that an owner of real estate can be divested of his title by a levy and sale of it, as the property of a stranger, he got no more right, title or interest in lot 98 by the pretended sheriff's sale and deed than he would have received if Windett had never pretended to own it. The very foundation of his claim of right to redeem, viz., his title to the property, failing, it is too clear for argument that he could have no standing upon the bill under which his decree was rendered.

There is another reason why the decree in question can not be upheld. It is not in the interest of right and justice. There is nothing in the case made by the bill upon which it was rendered, appealing to the conscience of the court to grant the relief prayed. On the contrary, when considered in the light of the evidence, the case is purely one of speculation on the part of appellant. Even as to one having a right to redeem, the rule is, "where the sale is attacked, not as simply void for non-compliance with the power, but as voidable on equitable considerations, having reference to the unfair mode in which the power has been executed, the decision must turn upon a comparison of the equities." (*Burr et al.* v. *Borden et al.* 61 Ill. 395.)

No good purpose would be served by reviewing the evidence bearing upon this view of the case. The findings of the court,

upon which the subsequent decree was based, clearly establish the fact that Burgess could have no standing in a court of equity as against any one having a legal or equitable interest in the property. The decree in his favor was clearly erroneous, and should be reversed.

There is, if possible, still less reason for the position that Windett is entitled, in equity, to the benefit of that decree as against Hurlbut. As above shown, he had his day in court, and was allowed the relief he asked. Instead of availing himself of that relief he elected to allow the title to "stand confirmed and unimpeached" in Hurlbut, and suffered his "bill to stand dismissed." What difference could it possibly make to him, after that time, who got the property, except as he desired to see his honest debts paid? He shows, by his answer and proofs, that Burgess was not entitled to the decree in his favor, and yet asks a court of equity to give him the benefit of that decree.

It is said in the decree under which Windett now claims, that Burgess acted in the premises as his trustee, and that Burgess acquired and now holds the legal title, and the benefit of said decree of June 21, 1889, for Windett's sole use and benefit. While the cross-bill under which his decree was rendered is pregnant with allegations of bad faith, breaches of confidence, violations of professional duty and fraud on the part of Burgess toward him, as to other parties, and other transactions, we have been unable to find, either in the allegations of the cross-bill, the evidence or the findings in the decree, wherein he, at any time, occupied a trust or confidential relation toward Windett as to this lot 98, or that he in any way or at any time, in a legal sense, interfered with or obstructed his efforts to redeem the same.

We express no opinion as to the merits of the controversy between these parties, arising out of the transactions set up in the cross-bill, but we think it too clear for argument, that such controversy can not be made the basis of a decree allow-

ing Windett to redeem the property here in question. As before said, his right to redeem was established, and, so far as this record shows, he voluntarily waived that right and chose to let the title stand in Hurlbut. We think the decree upon which he relies, set out at length in the abstract, refutes and condemns itself. It allows Windett to do indirectly that which it is conceded he could not do directly.

In our view of the case, the Superior Court erred in not denying both Burgess and Windett the right to redeem lot 98, and in not dismissing all bills, amended bills, cross-bills and amended cross-bills praying that relief, at the costs of the complainants therein.

In this view of the case, whether or not the decree of July 16, 1892, correctly fixes the amount due Mrs. Ruggles, is unimportant. That, and each of the other decrees above mentioned, will be reversed, and the cause will be remanded to the Superior Court, with directions to dismiss the bills and cross-bills as above indicated; and it is ordered that the costs in this court be paid by the appellant, William T. Burgess, and the appellee A. W. Windett, each paying one-half thereof.

*Decree reversed.*